**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

TODD GORDON, MARC and KRISTEN
MERCER, h/w, MICHELLE FOWLER,
GREG LAWSON, and JUDY CONARD,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

   v.

CHIPOTLE MEXICAN GRILL, INC.,      Civil Action No. 1:17-cv-01415-CMA-SKC

      Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT
AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e)**

---

Benjamin F. Johns
Andrew W. Ferich
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
bfj@chimicles.com
awf@chimicles.com

Tina Wolfson
Theodore Maya
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com

Jean Sutton Martin
**MORGAN & MORGAN**
2018 Eastwood Road, Suite 225
Wilmington, North Carolina 28403
Tel: (910) 292-6676
jean@jsmlawoffice.com

*Interim Co-Lead Counsel for Plaintiffs*

Plaintiffs Todd Gordon, Marc Mercer, Kristen Mercer, Michelle Fowler, Judy Conard, and Greg Lawson ("Plaintiffs") submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement with Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle"). This motion, if approved by the Court, will provide significant benefits—as set forth in the Settlement Agreement ("SA")[1]—to all persons affected by the Security Incident on which this action is based, during which approximately 10 million payment cards may have been compromised when used at certain of Chipotle's restaurants.

By submitting a clear and straightforward Claim Form,[2] any member of the Settlement Class who spent time or lost money as a result of the Security Incident will be able to recover up to $250 as reimbursement for their out-of-pocket expenses (including time spent), or up to $10,000 for certain extraordinary expenses.  There is no total cap on Settlement Class Members' recovery. In addition, Chipotle has agreed to significant equitable relief in the form of enhanced data security remediation measures designed to prevent another, similar security incident from occurring in the future. Chipotle has also agreed to pay, subject to Court approval, additional monies to pay costs of settlement administration, attorney fees, costs, and expenses, and a service award to each Plaintiff for their time and commitment to this action.

---

[1] The Settlement Agreement is submitted as **Exhibit 1** to the motion.
[2] The Claim Form is attached as **Exhibit B** to the Declaration of Benjamin F. Johns In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement (referred to hereafter as "Johns Decl."), which is submitted as **Exhibit 2** to the motion.

As discussed in more detail below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement because it promises fair, reasonable, and adequate relief for the Class.   Chipotle does not oppose the relief requested in this motion.

## RELEVANT FACTUAL BACKGROUND

### I.   Plaintiffs' Claims

Plaintiffs are consumers whose personal and non-public information—including their names, credit and debit card numbers, expiration dates, and internal card verification value codes—was compromised in a security breach of Chipotle's point of sale payment processing network at many of its stores on or around March 24, 2017 to April 18, 2017 (the "Security Incident").

### II   History of the Litigation

#### A.   The Complaint

Plaintiff Todd Gordon filed his lawsuit on June 9, 2017. (D.E. #1). On September 26, 2017, a Motion to Consolidate (D.E. #24) was filed to consolidate that case with the case styled, *Lawson et. al v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-1997-MSK, also filed in this Court. On December 8, 2017, Plaintiffs filed the Consolidated Amended Class Action Complaint ("CACC") (D.E. #36).

Plaintiffs allege that Chipotle failed to implement adequate data security measures to protect the confidential payment card data entrusted to it by its customers and that it failed promptly to inform customers that their information was compromised. *Id.* Plaintiffs further allege, *inter alia*, that victims of the Security Incident have had their

payment card information compromised, were exposed to fraud and identity theft, were exposed to the increased risk of fraud, lost control over their personal information, and have spent many hours attempting to address and mitigate the resulting fraud. *Id.*

Plaintiffs allege that in the wake of the breach, Chipotle failed to timely notify its customers and failed to provide meaningful assistance available to its customers, such as fraud insurance or credit monitoring. *Id.* Plaintiffs seek to represent a class consisting of all Chipotle customers who used a credit or debit card at one of the Chipotle locations affected by the Security Incident. *Id.*

### B.      The Motion to Dismiss Opinion

On January 22, 2018, Chipotle responded to the CACC by filing a motion to dismiss the case for failure to state a claim. (D.E. #43-44). After the motion was fully briefed, Magistrate Judge Mark L. Carman issued a Recommendation on Motion to Dismiss on August 1, 2018 (D.E. #73). On September 26, 2018, Judge Christine M. Arguello issued an Order Affirming in Part and Rejecting in Part Judge Carman's Recommendation (D.E. #82). Per the Court's opinion, many of Plaintiffs' claims survived, including claims under several state consumer protection statutes.

Chipotle filed an Answer to the CACC on October 10, 2018 (D.E. #83).

### C.      Discovery Efforts

Both parties conducted significant discovery. In particular, Plaintiffs served Defendant with document requests and Chipotle produced over 30,000 pages of documents, which Plaintiffs' counsel reviewed.   Johns Decl. at ¶¶ 7, 14.   Plaintiffs'

Counsel participated in a Rule 30(b)(6) deposition, along with the Financial Institution Plaintiffs in the companion case. *Id.* at ¶ 17.

## III.   Settlement Negotiations

All negotiations regarding settlement in this case have been conducted at arm's length, in  good faith, and absolutely free of any collusion.  Johns Decl. at ¶ 10.

After the ruling on Defendant's Motion to Dismiss, the parties commenced discussions regarding the possibility of reaching a negotiated, class-wide settlement. Counsel for Plaintiffs sent a written settlement demand to Defendant and the parties agreed to seek the aid of a private mediator to continue settlement negotiations. *Id.*

On February 12, 2019, the parties engaged in a full-day mediation session with experienced mediator Bennett G. Picker of Stradley Ronon Stevens & Young, LLP.  *Id.* at ¶ 12. With the assistance of the mediator, the parties reached agreement on the material terms of the settlement.  *Id.*  At the end of the day, after being unable to reach agreement on the amount of Plaintiffs' attorneys' fees and expenses, Mr. Picker submitted a mediator's proposal, which both sides accepted.  *Id.*

## IV.   The Proposed Settlement

As discussed in more detail below, the  Settlement provides for cash payments to Class Members for a variety of expenses, including time spent, incurred due to the Security Incident. SA at ¶¶ 2.1-2.2. In addition, as part of the settlement negotiations and the Settlement Agreement, Chipotle has undertaken significant measures to increase its data security measures and consumer information protection procedures. *Id.* at ¶ 2.4; Johns Decl. at ¶ 14.

In exchange for this consideration, Plaintiffs agree to provide Defendant with a release of claims relating in any way to the alleged conduct that gave rise to this action. SA at ¶ 6. Final approval of the Settlement also will result in the dismissal with prejudice of Plaintiffs' claims against Defendant.  *Id.* at ¶ 4.

### A.     The Settlement Class

The proposed settlement class (the "Settlement Class") is defined as:

> All persons residing in the United States who used a payment card to make a purchase at an affected Chipotle or Pizzeria Locale in-store point-of-sale device during the Security Incident, which as described in the definition of Security Incident occurred during the time frames and at the stores set forth in Exhibit F to the Settlement Agreement and Appendix A to the Publication Notice.

*Id.* at ¶ 1.24. The Settlement Class excludes: (i) Chipotle and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; (v) banks and other entities that issued payment cards which were utilized at Chipotle during the Security Incident; and (vi) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

### B.     Compensation to Class Members

As more fully explained in the Settlement Agreement, all Class Members who submit a valid claim during the claim period (which will run until 120 days following commencement of the notice program) will be entitled to expense reimbursement of up

to $250 for the following categories of potential expenses incurred as a result of the Security Incident:

- between one and four hours of documented lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $20 per hour);

- a $25 payment for each card on which documented fraudulent charges were incurred, even if they were later reimbursed;

- costs of credit report(s) purchased by Settlement Class Members between April 25, 2017 and the date of the claims deadline;

- costs of credit monitoring and identity theft protection purchased by Settlement Class Members between April 25, 2017 and the date of the claims deadline; and

- miscellaneous other specified expenses (e.g., unreimbursed charges from banks or credit card companies, bank fees, card reissuance fees, overdraft fees, charges related to unavailability of funds, late fees, and/or over-limit fees; long distance telephone charges; cell minutes, Internet usage charges, and text messages; postage or interest on payday loans due to card cancelation or due to over-limit situation).

SA at ¶ 2.1.    Settlement Class Members can explain how much time they spent addressing fraud or other results of the Security Incident, and/or their other losses as described above, on the Claim Form.

In addition, any Class Members who experienced extraordinary expenses will be eligible for reimbursement in the amount up to $10,000 per claim. *Id.* at ¶ 2.2.

### C.    Notice to Settlement Class Members

Separate from any payment to Class Members under the provisions described above, Chipotle shall pay any and all notice and administration costs associated with the settlement.   *Id.* at ¶ 2.6. The parties have selected RG/2 as the proposed claims administrator. The Declaration of Dominique Fite ("Fite Decl.", submitted with the motion

at **Exhibit 3**) describes the credentials of RG/2, and sets forth the proposed notice program (the "Notice Plan") relating to the Settlement here. The Notice Plan was designed to reach the greatest practicable number of members of the Settlement Class. *See* Fite Decl. at ¶¶ 5-6.

Chipotle does not possess the contact information of Class Members. Accordingly, the Claims Administrator designed a Notice Plan (*see* SA at Ex. C) that has two components: (1) publication notice and (2) notice on a dedicated settlement website. The proposed notice is designed to be easily understood and is reasonably calculated to inform potential Settlement Class Members about the Settlement. It includes clear instructions on how to exclude oneself from the Settlement and on how to object to the Settlement and/or any award of attorneys' fees. Additionally, the proposed notice contains information concerning: the  nature of the action and Plaintiffs' claims; the definition of the Settlement Class; the class claims,  issues, and defenses; that objecting to the Settlement Agreement; the binding effect of a class judgment on members of the Class; and a toll-free  number and web address to obtain more information and file a claim. *See* SA at Ex B.

### D.    Service Awards and Attorneys' Fees, Costs, and Expenses

As noted above, the Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service awards to the Class Representatives until after the substantive terms of the settlement had been agreed upon. Johns Decl. at ¶ 12; *see also* SA at ¶ 7.1.

Only after reaching agreement on all material terms did Chipotle and Plaintiffs' counsel begin discussion and reach agreement that, subject to Court approval, Defendant would pay Plaintiffs' attorneys' fees, costs and expenses in the amount of $1,200,000 and service awards to the Class Representatives in the amount of $2,500 each. SA at ¶¶ 7.2, 7.3. Payment of Plaintiffs' attorneys' fees, costs, and expenses and the service awards is to be separate from any and all class-wide compensation Class Members are entitled to under the Settlement Agreement and will not diminish or alter the benefits Class Members are entitled to in any way. *Id.* at ¶ 7.6.

## ARGUMENT

**I.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.**

### A.      The Settlement Is Fair, Reasonable, and Adequate.

Federal Rules of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* FED. R. CIV. P. 23(e)(1)(B); *see also* 2018 Advisory Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the

proposed settlement. *See* FED. R. CIV. P. 23(c)(2)(B); FED. R. CIV. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. FED. R. CIV. P. 23(e)(2); *see also Reiskin v. Reg'l Transp. Dist.*, No. 14-cv-03111-CMA-KLM, 2017 U.S. Dist. LEXIS 204242, at *6-7 (D. Colo. July 11, 2017) (citation omitted) ("'The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate.'").

Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). "The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Patipan Nakkhumpun v. Taylor*, No. 12-cv-01038-CMA-CBS, 2015 U.S. Dist. LEXIS 149850, at *8 (D. Colo. Nov. 3, 2015). "Thus, 'the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage.'" *Id.* (quoting Newberg on Class Actions § 13:13 (5th ed. 2015)).

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted).

Approval under amended Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: whether the class representatives and class counsel have adequately represented the class; whether the proposed settlement was negotiated at arm's length; whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and whether the proposed settlement treats class members equitably relative to each other.[3]

### 1. The Proposed Settlement Was Fairly and Honestly Negotiated with the Assistance of an Experienced Mediator.

The negotiations in this matter occurred at arm's length. Johns Decl. at ¶ 10. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). In this case, the parties reached an agreement

---

[3] The requirements under the 2018 amendments to Rule 23(3)(2) and the factors already used by courts in the Tenth Circuit significantly overlap.  *See Rhodes*, 308 F.R.D. at 667 (considering preliminary approval appropriate when: (1) the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties is that the settlement is fair and reasonable; (3) serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation).

on all material terms after months of negotiation, culminating with an all-day mediation on February 12, 2019. Johns Decl. at ¶ 12. As noted above, the parties ultimately accepted the mediators' proposal regarding the amount of Plaintiffs' attorneys' fees after they were unable to reach agreement on their own. *Id.* The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Picker supports the conclusion that the Settlement was achieved free of collusion, and merits preliminary approval. *See Alves v. Main*, No. 01-cv-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) (internal quotations omitted) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

### 2.   The Parties and Their Counsel Believe the Settlement is Fair and Reasonable.

Plaintiffs and their Counsel had a deep appreciation of the merits before reaching the proposed settlement. (D.E. #10-11). They were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle. *Id.* Among other things, Plaintiffs' counsel: (i) conducted an extensive investigation prior to filing the Complaint; (ii) served formal, written discovery requests on Chipotle; (iii) reviewed and analyzed information provided by Chipotle in response to Plaintiffs' request in advance of the mediation; (iv) reviewed and analyzed documents relating to Chipotle's available insurance coverage and documents relating to a formal investigatory report produced by Defendant about to the Security Incident; (v) examined Chipotle's designee witness at the Rule 30(b)(6) deposition and (vi) participated in a mediation process that provided Plaintiffs' counsel with a thorough understanding of Defendant's arguments on liability

and damages. *Id.* Notably, the mediation occurred approximately one year and eight months after this lawsuit was first filed.

Class Counsel had also completed full briefing on a motion to dismiss, and overcame Chipotle's motion with respect to many claims. Johns Decl. at ¶ 8. The motion to dismiss opinion had the added benefit of providing both parties with insight on the Court's view of the risks and issues faced by both parties.  This litigation and discovery provided a sufficient basis for Plaintiffs' counsel to conclude that the settlement was in the best interests of Plaintiffs and the Class.

### 3.    The Value of the Settlement Benefits are Significant in Light of the Risks of Continued Litigation.

The proposed Settlement is a claims-made settlement that will confer significant and timely benefits to Class Members.

In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data breach litigation, and reported settlements in other data breach class actions. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.[4]

---

[4] For individuals who experienced actual identity theft, a 2014 Congressional Report stated that these victims incurred an average of $365.00 in expenses in dealing with the fraud.  *See* Kristin Finklea, Congressional Research Service, *Identity Theft: Trends and Issues* (January 16, 2014), p. 2, available at https://fas.org/sgp/crs/misc/R40599.pdf (last visited May 21, 2019).

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class.

Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data breach class actions that have been approved by other courts. *See, e.g., In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016) (approving $13 million fund, maximum of $10,000 in expense reimbursement, documented time of 5 hours at $15/hour and up to 2 hours of self-certified time only if had also documented losses with class size of 40 million consumers); *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *1 (D. Minn. Nov. 17, 2015) (approving settlement that provided $10 million to pay for losses and time spent as a result of Target data breach, and injunctive relief with class size of 100 million consumers); *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048-1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses); *In re Countrywide Financial Corp. Customer Data Security Breach Litig.,* No. 3:08-MD-01998, 2009 WL 5184352, at *1-4 (W.D. Ky. Dec. 22, 2009) (approving settlement that provided up to $1.5 million to

pay out-of-pocket costs, up to $5 million to pay identity theft losses, and 2 years of free credit monitoring services); *Bray, et. al. v. Gamestop Corp.*, No. 1:17-cv-01365 (D. Del. Dec. 19, 2018) (approving claims-made settlement that would reimburse up to $235/claim including, *inter alia*, expenses for lost time, payment for each card on which fraudulent charges incurred, costs of obtaining credit report, costs of credit monitoring and identity theft protection, as well as up to $10,000/claim for extraordinary expenses); *T.A.N. v. PNI Digital Media, Inc.*, No. 2:16-cv-00132, ECF No. 46 (S.D. Ga. Oct. 20, 2017) (approving settlement for 766,000 class members to be reimbursed up to $250/claim for out-of-pocket expenses—for a potential value of $7 million—plus up to $10,000/claim for reimbursement of extraordinary expenses).

Furthermore, the injunctive relief provided for in this Settlement is significant and advances and ensures the rights of the class because it swiftly commits Defendant to certain security measures and protection of personal information. The injunctive measures in the Settlement are squarely consistent with the claims on which Plaintiffs have focused in the litigation. These commitments will ensure the adequacy of Chipotle's data security practices, and will provide ongoing protection for any Settlement Class Members' information remaining on Chipotle's data systems, as well as providing protection for consumers in the future. Without this Settlement, there is nothing Settlement Class Members could do individually to achieve similar promises from Chipotle regarding data security going forward.  The Settlement is calculated to ensure that Chipotle not only employs the necessary, immediate resources to address existing data security vulnerabilities, but also employs the consistent best practices and

accountabilities needed for long-term, proactive data security.

Class Counsel assert that the Settlement benefits provided to Plaintiffs and Class Members through this Settlement present a substantial recovery, especially considering the strengths of the claims and the litigation risks described above.

### 4. The Risks of Continued Litigation are Significant given the Serious Questions of Law and Fact.

Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to prosecute the litigation against Chipotle through motion practice, discovery, trial, and potential appeals. Class Counsel believe that the claims asserted in the litigation have merit. However, Class Counsel have taken into account the uncertain outcome and the risk of further litigation.[5] Chipotle denies the claims and contentions alleged against it in this litigation, and it has additional defenses (such as those going to class certification) that have not yet been resolved by the Court.

It is almost assured that any future decisions on the merits would be appealed, which would then cause further delay. In contrast, the Settlement will promptly make available significant benefits for the members of Settlement Class. Due to the significant risks in this litigation and the uncertainty of prevailing on the merits and of establishing damages, this factor favors preliminary approval of the Settlement Agreement.

### 5. The Named Plaintiffs and Interim Class Counsel have Zealously Represented the Class.

---

[5] While the Court denied Chipotle's motion to dismiss in part, Plaintiffs recognize that there are significant risks associated with obtaining class certification and prevailing on a motion for summary judgment. *See, e.g., Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *6 (S.D.N.Y. June 25, 2010) (granting defendant's motion for summary judgment in a consumer data breach case).

In addressing the adequacy of proposed class representatives, district courts examine whether the class representative has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict of interest between the representative and the class. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126-127 (D. Colo. 2016). Here, all of the named Plaintiffs are adequate class representatives. The Plaintiffs frequently communicate with their attorneys regarding the litigation, have participated in this litigation as need has arisen (e.g., responding to discovery), and none has interests that are antagonistic to those of the Class. Johns Decl. at ¶ 7. Plaintiffs have vigorously prosecuted this case for the benefit of all members of the Settlement Class.

As to Plaintiffs' Counsel, under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

Here, Plaintiffs' Counsel have invested considerable time and resources into the prosecution of this action, and are well-qualified to serve as class counsel based upon (among other things) their experience in prosecuting complex class actions, including large data breach actions. Indeed, this Court has already appointed Plaintiffs' Counsel as interim co-lead counsel. *See* D.E. # 78.

**6.      The Settlement Provides a Straightforward Claims Process.**

The Settlement provides for reimbursement of out-of-pocket expenses incurred as a result of the Security Incident. As a part of the reimbursement, Class Members are eligible also to make a claim for the time spent dealing with the consequences of the Security Incident and receive an automatic payment of $25 for every payment card on which the Class Member experienced fraudulent charges as a result of the Security Incident.

To seek monetary payment under the Settlement, Class Members will submit a simple Claim Form online or by mail. The claims process is designed to be as straightforward and convenient for Class Members as possible.

**7.      Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees, Costs, and Expenses.**

The Parties did not discuss payment of attorneys' fees, costs, expenses until after the substantive terms of the settlement had been agreed upon by the parties. Johns Decl. at ¶ 12.  Under the Settlement, Plaintiffs' Counsel have agreed to request, and Chipotle has agreed to pay, subject to Court approval, $1.2 million for attorneys' fees and costs and expenses. Pursuant to the Settlement, and as noted below, the parties will request a settlement schedule that will provide for the motion for attorneys' fees, costs, and expenses to be filed with the Court prior to the Objection and Opt-Out deadlines.

None of the settlement benefits will be reduced to pay Court-awarded attorneys' fees, costs or expenses to Plaintiffs' Counsel. These will be paid by Defendant in addition to the benefits to the Class.

**8.      The Proposed Settlement Treats Class Members Equitably Relative To Each Other.**

The proposed Settlement is a claims-made settlement, without any preferential treatment of the named Plaintiffs or any segments of the Class. *See* FED. R. CIV. P. 23(e)(2)(D). With this proposed Settlement, Settlement Class Members are able to recover damages for any injuries caused by the Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses, as well as time spent, allow Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Settlement Class Representatives.   These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation.   *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

A service award to the named Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation, and does not constitute preferential treatment. No named Plaintiff was promised, nor conditioned their representation on the expectation of a service award. Johns Decl. at ¶ 12.   The payment of the service awards will not reduce any of the monetary benefits to the Class, further supporting the appropriateness of these awards.

**9.      The Court Will Be Able To Certify The Class For Settlement Purposes Upon Final Approval.**

In granting preliminary approval and directing notice to the Settlement Class, the Court should also make a determination whether it will likely be able to certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 23(e)(1)(B)(ii). Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See id.* at 593. As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

**B.      The Settlement Class Satisfies the Requirements of Rule 23(a)**

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); *see also Amchem*, 521 U.S. at 613. As discussed below, the proposed settlement class meets each of these requirements.

**1.      The numerosity requirement is satisfied.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).[6] Numerosity is plainly satisfied here—roughly 10 million payment cards may have been affected by the Security Incident.

### *2.* **The commonality requirement is satisfied***.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

In this case, there are myriad common questions of law and fact, including, *inter alia*, whether Chipotle owed a duty to Plaintiffs and members of the Class to adequately protect their Card Information and to provide timely and accurate notice of the Security Incident to Plaintiffs and the Class; whether Chipotle breached these duties; whether Chipotle violated federal and state laws; whether Chipotle knew or should have known

---

[6] While the Tenth Circuit has not adopted a minimum numerical threshold, classes consisting of 50 or 100 members are generally found to easily satisfy numerosity. *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (collecting cases).

that its computer and network systems were vulnerable to attack from hackers; whether Chipotle's conduct, including its failure to act, was the proximate cause of the breach of its computer and network systems resulting in the loss of customers' Card Information; whether Chipotle wrongfully failed to inform Plaintiffs and members of the Class that it did not maintain security procedures sufficient to reasonably safeguard their financial and personal data; whether Chipotle has taken adequate preventive measures to ensure the Plaintiffs and Class Members will not experience further harm; whether Plaintiffs and members of the Class suffered injury as a proximate result of Chipotle's conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Chipotle.

Resolving the allegations surrounding Defendant's alleged conduct relating to the Security Incident will resolve issues that are "central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. Commonality is satisfied.

### 3.   The typicality requirement is satisfied.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego*, 313 F.R.D. at 126 (quoting *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352 at *8 (D. Colo. Jun. 1, 2011)).

Here, the Plaintiffs' and Class Members' claims all arise from the same Security Incident and same alleged course of conduct by Defendant. Plaintiffs allege that Defendant's conduct was uniform as to each Class Member, and all members of the

proposed class seek to recover for the resulting injury based on the same legal theories. *See, e.g., id.* ("Factual differences among individual claims do not defeat typicality, as long as the legal theory underlying the plaintiff's claims is the same."). The typicality requirement is satisfied.

### 4.      The adequacy requirement is satisfied.

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010)).

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class."  1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation."  *Id.*; *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. They used their payment cards to make purchases at Defendant's restaurants and they allege their personal information was compromised as a result of the Security Incident, as the personal information of the

Settlement Class was also allegedly compromised.   Indeed, Plaintiffs' claims coincide identically with the claims of the Settlement Class.

The Court previously appointed Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP (previously named Chimicles & Tikellis LLP), Tina Wolfson of Ahdoot & Wolfson, PC, and Jean Martin of Morgan & Morgan as Interim Co-Lead Class Counsel in this matter. *See* D.E. #78. Plaintiffs' counsel respectfully submit that they be appointed to these same positions again. *Pliego*, 313 F.R.D. at 127 (quoting *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998)) ("Absent evidence to the contrary, a presumption of adequate representation is invoked.").

### C.   The Requirements of Rule 23(b)(3) Are Also Satisfied.

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Pliego*, 313 F.R.D. at 127 (citing FED. R. CIV. P. 23(b)(3)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

### 1.   Common legal and factual questions predominate individual ones.

Under the first criterion of Rule 23(b)(3), the Court must find that questions of law or fact common to class members predominate over any questions affecting only

individual members. *Pliego*, 313 F.R.D. at 126 (citing FED. R. CIV. P. 23(b)(3)). Plaintiffs have satisfied the predominance requirement because questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to the Class Members. For example, each Settlement Class Member's relationship with Chipotle is the same or substantially similar in all relevant respects to other Class Members—the Plaintiffs and each Class Member made purchases at Chipotle's stores which were affected by the Security Incident and during the period of the Security Incident, and had their private and sensitive financial information exposed to cyber-criminals. Here, the same alleged course of conduct by Defendant gives rise to all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendant's liability at the core of this action, which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

## 2. A class action is superior to other methods of adjudication.

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3). The superiority requirement is easily satisfied here where there are a large number of class members

with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

The Settlement Agreement and Plan of Notice provide members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and there are well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant, by going forward with this case as a class action. And because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. Finally, the complexity of the claims asserted against Chipotle and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### D.   The Proposed Plan of Notice Should Be Approved.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or

compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Litigation (4th Ed.) ("MCL"), § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* MCL, § 21.312 (listing relevant information).

The proposed Notice Program satisfies these criteria. First, publication notice is appropriate in this case as it is most far-reaching and comprehensive manner in which to notify Settlement Class Members whose personal and/or contact information is not otherwise known. Fite Decl. ¶¶ 5-9.  Second, the Notice will inform Settlement Class Members of the substantive terms of the Settlement, their options for opting-out or objecting to the Settlement, and how to obtain additional information about the Settlement. *See* Settlement Agreement, Exhibits A-C. Specifically, the Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Plaintiffs' Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the

procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.

###    E.    A Final Approval Hearing Should Be Scheduled.

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's Fee and Costs Application and request for Service Award for the Plaintiffs. Plaintiffs request that the Court schedule the Final Approval Hearing for the earliest date convenient for the Court that is consistent with the schedule below.

Plaintiffs propose the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act ("CAFA"):

| Event | Date |
|---|---|
| Chipotle Provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| Notice Program Commences | Within 30 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d) | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| Postmark Deadline for requests for | 120 days after Commencement of Notice |

| Exclusion (Opt-Out) or Objections | Program |
|---|---|
| Postmark/Filing Deadline for Filing Claims | 120 days after Commencement of Notice Program |
| Filing Motion for Attorney's Fees, Reimbursement of Expenses, and Service Awards to be Filed by Class Counsel | At Least 14 days before the Objection Deadline |
| Filing Motion for Final Approval to be Filed by Class Counsel | At Least 21 days before the Final Approval Hearing |
| Final Approval Hearing | Approximately 150 days after Commencement of Notice Program |

## **CONCLUSION**

Based on the foregoing, Plaintiffs and Proposed Class Counsel respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure; (3) approve the Notice Program; (4) approve, set deadlines for, and order the opt out and objection procedures set forth in the Agreement; (5) appoint Plaintiffs as class representatives; (6) appoint as Proposed Class Counsel Benjamin F. Johns of Chimicles Schwartz Kriner & Donaldson-Smith LLP, Tina Wolfson of Ahdoot & Wolfson, PC, and Jean Sutton Martin of Morgan & Morgan (7) stay the Action against Chipotle pending Final Approval of the Settlement; and (8) schedule a Final Fairness Hearing. A proposed order has been submitted as **Exhibit 4** to the motion.[7]

---

[7] A [Proposed] Final Approval Order is also submitted as **Exhibit C** to the Johns Decl.

Dated: June 13, 2019                    Respectfully submitted,

                              By:     /s/ *Benjamin F. Johns*
                                      Benjamin F. Johns
                                      Andrew W. Ferich
                                      **CHIMICLES SCHWARTZ KRINER
                                      & DONALDSON-SMITH LLP**
                                      361 W. Lancaster Avenue
                                      Haverford, Pennsylvania 19041
                                      Tel: (610) 642-8500
                                      bfj@chimicles.com
                                      awf@chimicles.com

                                      Tina Wolfson
                                      Theodore Maya
                                      **AHDOOT & WOLFSON, PC**
                                      10728 Lindbrook Drive
                                      Los Angeles, California 90024
                                      Tel: (310) 474-9111
                                      Fax: (310) 474-8585
                                      twolfson@ahdootwolfson.com
                                      tmaya@ahdootwolfson.com

                                      Jean Sutton Martin
                                      **MORGAN & MORGAN**
                                      2018 Eastwood Road, Suite 225
                                      Wilmington, North Carolina 28403
                                      Tel: (910) 292-6676
                                      jean@jsmlawoffice.com

                                      *Interim Co-Lead Counsel for Plaintiffs*